**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH K. FRAZE, | CASE NO. 5:21-CV-02300-JRA |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

**INTRODUCTION**

Plaintiff Elizabeth K. Fraze filed a Complaint against the Commissioner of Social Security (Commissioner) seeking judicial review of the Commissioner's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On December 8, 2021, pursuant to Local Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. (Non-document entry dated Dec. 8, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** Commissioner's decision.

**PROCEDURAL BACKGROUND**

Ms. Fraze filed for DIB and SSI on September 20, 2016, alleging a disability onset date of December 20, 2008. (Tr. 266, 501, 505). The claims were denied initially and on reconsideration.

1

(Tr. 304, 305, 340, 341). She then requested a hearing before an Administrative Law Judge. (Tr. 450). Ms. Fraze (represented by counsel) and a vocational expert (VE) testified at a hearing before the ALJ on January 6, 2019. (Tr. 220-55). On February 7, 2019, the ALJ issued a written decision finding Ms. Fraze not disabled. (Tr. 342-63). The Appeals Council reviewed the unfavorable decision and remanded the matter to the ALJ with instructions to give further consideration to Ms. Fraze's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. (Tr. 366-67).

On August 21, 2020, the ALJ issued another written decision finding Ms. Fraze not disabled. (Tr. 8-34). The Appeals Council denied Ms. Fraze's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7; *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481). Ms. Fraze timely filed this action on December 8, 2021. (ECF #1).

FACTUAL BACKGROUND

## I.   PERSONAL AND VOCATIONAL EVIDENCE

Ms. Fraze was 22 years old on her alleged onset date, and 34 years old at the time of the most recent administrative hearing. (Tr. 266). Ms. Fraze completed 9th grade and has not obtained a GED. (Tr. 225). In the past, Ms. Fraze has been employed as a nurse assistant, a case aide, and a housekeeper. (Tr. 25). The nurse assistant job alone meets the criteria to be considered past relevant work. (*Id.*). Payroll records from 2020 indicate Ms. Fraze worked in a part-time position, typically 20-30 hours a week. (Tr. 536-38). The payroll records also indicate Ms. Fraze did not work any hours between May 10, 2020, and July 1, 2020. (Tr. 537).

2

II.    RELEVANT MEDICAL EVIDENCE[1]

On June 16, 2016, Ms. Fraze underwent a psychosocial assessment at Mountain Comprehensive Care Center. (Tr. 688-96). During the assessment, Ms. Fraze reported depression, anxiety for "all of her life," panic attacks when overwhelmed, difficulty falling and staying asleep, flashbacks, obsessive thoughts, irritability and anger, crying spells, sudden mood changes, frequent handwashing for fear of germs, and fatigue. (Tr. 688). Other obsessive tendencies include frequently checking the stove and locks and requiring things to be numbered even and be symmetrical. (Id.). She was unable to identify any particular stress that causes or contributes to her issues. (Tr. 689). Mental status examination revealed rigid posture, restless body movements, and an anxious mood; otherwise, she was cooperative, maintained fair eye contact, spoke clearly, and displayed intact memory, insight, and judgment. (Tr. 694). Mary Kubach, LCSW, noted Ms. Fraze was alert and oriented, but was very anxious as evidenced by pacing, sweating, having to wash her face with a cold cloth, throwing up in the bathroom, and psychomotor movement observed throughout the session. (Tr. 696).

On June 28, 2016, Ms. Fraze underwent an adult psychiatric evaluation. (Tr. 697-703). Ms. Fraze reported a history of physical and sexual abuse. (Tr. 699-700). Ms. Fraze reported symptoms of depression and anxiety, panic attacks, mood swings, irritability, obsessive compulsive disorder (OCD), and flashbacks. (Tr. 702). Mental status examination revealed an anxious mood and racing thoughts. (Tr. 701). The evaluator's diagnostic impressions included unspecified bipolar disorder,

---

[1]    Ms. Fraze challenges the ALJ's conclusions related to her mental health impairments. I therefore confine my summarization of the relevant medical evidence to those mental health impairments.

3

OCD with good or fair insight, post-traumatic stress disorder, and borderline personality disorder. She received prescriptions for lorazepam to treat panic attacks and anxiety and Zoloft. (Tr. 702).

On June 30, 2016, Ms. Fraze met with Ms. Kubach. (Tr. 685-86). Mental status examination revealed an anxious mood. (Tr. 685). Mr. Fraze reported sleeping better after starting her medications. (Tr. 686).

On July 26, 2016, Ms. Fraze met with the nurse practitioner who increased her prescriptions for Zoloft and lorazepam and provided Ms. Fraze with samples of Latuda. (Tr. 661). Ms. Fraze also met with Ms. Kubach and displayed an anxious mood and reported continued nightmares that are vivid and distressful. (Tr. 680).

On September 9, 2016, the nurse practitioner increased Ms. Fraze's dosage of Zoloft. (Tr. 657). The nurse practitioner noted Ms. Fraze trembled, and her legs shook at times during the session. (Tr. 656). Mental status examination revealed Ms. Fraze was agitated and restless, displayed a depressed and anxious mood, and spoke rapidly. (*Id.*). She was preoccupied with worries about the custody situation. (*Id.*). The nurse practitioner noted that Ms. Fraze's progress is hindered by situational emotional upheaval. (Tr. 657).

That same day, Ms. Fraze presented to Ms. Kubach with an anxious mood and was tearful. (Tr. 673). She was noted to move her legs and feet throughout the session. (*Id.*). Ms. Fraze reported that the nurse practitioner increased her medications that morning. (Tr. 674). They discussed custody and legal issues pertaining to Ms. Fraze's children. (*Id.*). Ms. Fraze was calmer at the end of the session. (*Id.*).

On September 26, 2016, Ms. Fraze presented with an anxious mood but was, again, calmer at the end of the session. (Tr. 670-71). On October 10, 2016, Ms. Fraze was anxious and restless,

moving her feet and legs throughout the session. (Tr. 667). She reported increased symptoms of anxiety, including hypervigilance, irritability, feeling "on guard," decreased appetite, and sleep disturbances. (Tr. 668).

After moving from Kentucky to Ohio, Ms. Fraze underwent an adult comprehensive assessment in November 2016 at CommQuest Services, Inc. (Tr. 713-20). On January 9, 2017, Ms. Fraze met with Marissa Ragon, CNP, for treatment. (Tr. 740). NP Ragon noted Ms. Fraze shifted in her seat and bounced her legs constantly. (*Id.*). She cried profusely when discussing her three children who remained in Kentucky with their father. (*Id.*). Mental status examination revealed an anxious mood, constricted affect, and a racing and scattered through process. (Tr. 741). NP Ragon prescribed Prozac and Lamictal. (Tr. 742).

On March 16, 2017, Ms. Fraze met with NP Ragon. (Tr. 792-94). Ms. Fraze claimed her medication initially helped but no longer does. (Tr. 792). She presented with a depressed mood and blunted affect. (*Id.*). She was tearful and had racing thoughts but was less jittery during the session. (*Id.*). Otherwise, Ms. Fraze displayed good judgment and insight. (Tr. 794). Ms. Fraze received prescriptions for Prozac, Lamictal, and Wellbutrin. (Tr. 793).

On April 17, 2017, Ms. Fraze displayed a bright and full affect. (Tr. 800). She bounced her legs and slapped her thighs throughout the session but remained engaged and cooperative. (*Id.*). Her children came to Ohio for spring break and stayed with her. (*Id.*). She was happy to see them but noted they were loud, which increased her anxiety. (*Id.*). Ms. Fraze reported this was the first she left her house in two weeks. (*Id.*). Ms. Fraze agreed to try Celexa for increased anxiety/social

anxiety and trazadone for sleep. (*Id.*). NP Ragon discontinued the prescription for Prozac. (Tr. 801).

Ms. Fraze returned to NP Ragon on a walk-in basis on August 31, 2017. (Tr. 1097). She reported increased crying, racing thoughts, and flashbacks. (*Id.*). Ms. Fraze reported undergoing a hysterectomy on July 27, 2017, during which the surgeon nicked her bladder, causing additional complications. (*Id.*). Shortly thereafter, she had a bowel obstruction. (*Id.*). As a result, she was in and out of the hospital three times. (*Id.*). Ms. Fraze explained she was not medication compliant during this series of issues and did not take her medications for up to a week. (*Id.*). Ms. Fraze was described as tearful and restless. (*Id.*). She displayed a depressed mood but no deficits in memory, concentration, insight, or judgment. (*Id.*). NP Ragon provided prescriptions for Lamictal, Wellbutrin, Celexa, and Trazadone. (Tr 1098).

Ms. Fraze next met with NP Ragon on May 31, 2018. (Tr. 1094). She explained having been off her psychiatric medications due to illness. (Tr. 1094). She was fitted with a colostomy bag after additional bowel complications. (*Id.*). Ms. Fraze explained her children are with her for the summer and she is feeling overwhelmed. (*Id.*). Nurse Ragon noted Ms. Fraze cried most of the session and was cooperative, talkative, and restless. (Tr. 1095). Mental status examination revealed an anxious mood and restricted affect, with good memory, judgment, and insight. (*Id.*). NP Ragon prescribed Valium, Celexa, and trazadone. (Tr. 1094).

Ms. Fraze returned on June 29, 2018, and reported her children had to go back to Kentucky that day. (Tr. 1091). She cried profusely and displayed a very anxious mood, restlessness, and hyperactivity. (Tr. 1092). NP Ragon added Xanax to Ms. Fraze's prescription regimen. (Tr. 1093). On July 20, 2018, Ms. Fraze endorsed increased anxiety because she had to temporarily

return her dog to the breeder until her apartment manager approved. (Tr. 1088). Mental status examination was normal, aside from an anxious mood and restlessness. (Tr. 1089). NP Ragon continued Ms. Fraze's medications. (*Id.*).

Ms. Fraze returned on January 30, 2019. (Tr. 1523). She ran out of her medications in November 2018. (*Id.*). She stated the medication was effective and, without them, she feels anxious and severely depressed. (*Id.*). Mental status examination was notable for anxious mood, constricted affect, and poor concentration. (Tr. 1524). Ms. Fraze was also restless. (*Id.*). NP Ragon prescribed Vistaril and Celexa. (Tr. 1525).

On March 6, 2019, Nurse Ragon noted Ms. Fraze to be anxious and restless during the session. (Tr. 1527). She reported feeling depressed and agitated with poor sleep and appetite. (*Id.*). She was tearful while discussing her children and reported her dog being a source of emotional support. (*Id.*). Mental status examination was notable for a depressed mood and poor concentration. (Tr. 1528). NP Ragon continued Vistaril and Celexa and added prescriptions for Xanax and Latuda. (Tr. 1529).

On March 11, 2019, Ms. Fraze met with Gina Bowers, LISWS, for an initial comprehensive assessment. (Tr. 1508). She reported currently taking Latuda, Celexa, Vistaril, and Xanax. (*Id.*). Based on the reported symptoms, Ms. Bowers determined Ms. Fraze met the criteria for Bipolar I, moderate, post-traumatic stress disorder, chronic, and generalized anxiety disorder with panic attacks. (Tr. 1520-21).

On March 27, 2019, Ms. Fraze met with NP Ragon and reported feeling a bit better, with less intense anxiety and depression. (Tr. 1531). She described being able to get out of bed and complete some chores and reported adequate sleep and appetite. (*Id.*). In addition, Ms. Fraze

reported not coping well with a temporary relocation within her apartment complex for remodeling. (*Id.*). Mental status examination was notable for restlessness and hyperactivity, anxious mood, and fair concentration. (Tr. 1532). NP Ragon continued her medications. (Tr. 1533).

Ms. Fraze returned in June 2019 and expressed a stable mood since her daughter, age seven, came to stay with her in May. (Tr. 1535). Mental status examination was notable for hyperactivity, mild anxiety, and fair concentration. (Tr. 1536). Nurse Ragon continued her medications. (Tr. 1537).

In December 2019, Ms. Fraze reported a stable mood and denied feeling depressed. (Tr. 1539). She endorsed intermittent situational anxiety, usually mild. (*Id.*). Mental status examination was notable for restlessness and fair concentration. (Tr. 1540). NP Ragon continued Ms. Fraze's medications. (Tr. 1541).

Ms. Fraze spoke with NP Ragon over the phone in June 2020 and reported running out of her medications three months prior. (Tr. 1543). She did not follow up sooner because she had been very busy. (*Id.*). She described her job, working with individuals who have disabilities, as very stressful, stated she worked 60 hours a week for some time, and endorsed feeling overwhelmed often. (*Id.*). While off medication her anxiety is severe and depression is mild to moderate. (*Id.*). Mental status examination was notable for anxious mood. (Tr. 1545). NP Ragon prescribed Latuda, Celexa, Chantix, Vistaril, and Xanax. (Tr. 1545-1546).

## III.    MEDICAL OPINIONS

On February 2, 2017, at the request of the Ohio Division of Disability Determinations, NP Ragon completed a Mental Status Questionnaire. (Tr. 744-46). NP Ragon reported Ms. Fraze's halted and broken speech, trembling and profuse crying, and depressed and anxious mood and

blunted affect. (Tr. 744). NP Ragon reported Ms. Fraze's symptoms, including racing thoughts, increased psychomotor agitation, inability to tolerate groups of people, hypervigilance, and marked impairment in cognitive functioning. (*Id.*). She opined Ms. Fraze would have difficulty with remembering, understanding, and following directions; maintaining attention; and sustaining concentration and persisting and completing tasks in a timely fashion. (Tr. 745). NP Ragon noted Ms. Fraze is unable to tolerate groups of people or crowds and described adaptation deficiencies, including hypervigilance, high levels of anxiety, and an inability to self-soothe or self-calm. (*Id.*). NP Ragon opined Ms. Fraze would be unable to react to pressures involved in simple and routine, or repetitive, tasks and additionally noted Ms. Fraze had attempted to work in the past but could not maintain employment. (*Id.*).

On March 13, 2017, Joseph Konieczny, Ph.D, performed a consultative examination. (Tr. 785-89). During the clinical interview, Ms. Fraze reported recent feelings of depression, daily episodes of crying; intense anxiety; agitation; moodiness; a history of physical, emotional, and sexual abuse between the ages of 4 and 18; flashbacks; frequent intrusive thoughts and nightmares; and hypervigilance. (Tr. 786). Mental status examination revealed adequate grooming and hygiene, frequent leg movements, and an anxious mood. (Tr. 786-87). She was otherwise cooperative and responded to all questions and tasks posed. (Tr. 787). Dr. Konieczny noted her ability to concentrate and attend to tasks showed no indication of impairment, though responses to some tasks were slow. (*Id.*). She displayed no deficits in her ability to perform logical abstract reasoning. (*Id.*). She showed mild deficit in her overall level of judgment. (*Id.*). Dr. Konieczny stated "[s]he would appear to require some degree of supervision and monitoring in the management of her

daily activities and in handling her financial affairs. (*Id.*). Dr. Konieczny provided the following

summary of Ms. Fraze's description of a typical day:

> Elizabeth typically gets up at 8:30 a.m. She typically gets dressed only when she is
> going out of the house. She occasionally eats breakfast. She spends the majority of
> the morning attending to her son. Following lunch, she will engage in household
> chores and attend to her son. Following supper, she will attend to her son and
> interact with her grandmother before retiring at 10:00 p.m. Elizabeth is minimally
> involved in outside social activities. She reported having no friends.
>
> Elizabeth does hold a valid driver's license, but participates only occasionally in
> routine driving tasks. She does perform some of the cooking tasks in the home. She
> participates in cleaning, laundry, and household tasks. She performs her own
> shopping tasks and manages her finances.

(*Id.*). Dr. Konieczny opined Ms. Fraze has a mild limitation in her abilities to understand,

remember, and carry out instruction. (Tr. 788). As a result of her mood symptoms and intellectual

limitations, Ms. Fraze would have some difficulty maintaining focus and persistence on mild to

moderately complex multi-step tasks, diminished tolerance for frustration and diminished copying

skills which would impact her ability to respond to typical supervision and interpersonal situations

and her ability to respond to typical pressure situations in the work setting. (Tr. 788-89). Dr.

Konieczny diagnosed post-traumatic stress disorder, major depressive disorder, and borderline

intellectual functioning. (Tr. 789).

On March 16, 2017, after review of Ms. Fraze's medical records, Karla Delcour, Ph.D.,

opined Ms. Fraze had a mild limitation in her abilities to concentrate, persist, or maintain pace

and moderate limitation in her abilities to understand, remember, or apply information; interact

with others; and adapt or manage oneself. (Tr. 277; 296). She further concluded Ms. Fraze can

understand and remember simple and some multi-step tasks, maintain superficial interaction with

others in the workplace, and can adapt to changes in the work setting when changes are explained

in advance. (Tr. 281-82; 300). On April 20, 2017, Carl Tishler, Ph.D., reviewed Ms. Fraze's

medical records and adopted Dr. Delcour's opinions. (Tr. 318-19; 335-36).

In August 2020, Gina Bowers, LISW-S, a Certified Clinical Trauma Professional, prepared

a letter summarizing Ms. Fraze's treatment and completed a mental impairment questionnaire. (Tr.

1577-82). Ms. Bowers began treating Ms. Fraze in March 2019 and currently meets with her once

or twice a month. (Tr. 1579). Ms. Bowers' letter described her observations of Ms. Fraze in a

community-based setting, including panic attacks, frequent crying, hypervigilance, restlessness,

rapid breathing, difficulty concentrating and focusing. (Tr. 1577). Ms. Bowers also detailed Ms.

Fraze's reported difficulties at work in a setting where she cares for others with disabilities,

including panic attacks, outbursts, and irritability. (Tr. 1577). Ms. Bowers endorsed a mixture of

mild to marked limitations in Ms. Fraze's ability to perform certain work activities and opined Ms.

Fraze would be absent from work three to four days a month as a result of her mental health

symptoms. (Tr. 1580-82). Additionally, Ms. Bowers stated "Ms. Fraze struggles with being in loud

environments or in close proximity of others (feeling crowded) and is triggered by males and

women who have angry/loud voices." (Tr. 1582).

## IV.  ADMINISTRATIVE HEARING

At the hearing before the ALJ, Ms. Fraze and VE Kenneth Jones testified.

Ms. Fraze described working with individuals with disabilities, some of whom suffer mental

impairments similar to her own. (Tr. 192). She endorsed working five days a week from 8:30 a.m.

to 2:15 p.m. (*Id.*). The work is stressful and causes anxiety. (*Id.*). When not working, Ms. Fraze

either stays at home or goes to her mother's home. (Tr. 195). Ms. Fraze explained needing to take

off work "quite often" due to her symptoms. (Tr. 201). She endorsed being unable to sleep at times

11

and needing to take a nap after work each day. (Tr. 202-03). She experiences panic attacks more frequently when she works. (Tr. 203). Ms. Fraze testified to caring for her son, who stays with her. (Tr. 194). Ms. Fraze's mother cares for her son on her difficult days, usually two to three times a week. (*Id.*; Tr. 204).

VE Jones classified Ms. Fraze's past relevant work as nurse assistant (DOT 355.674-014; SVP 4; medium exertion), cleaner/housekeeping (DOT 323.687-014; SVP 2; light exertion), and case aide (DOT 195.367-010; SVP 3; light exertion). (Tr. 205-06). The VE testified a hypothetical individual of Ms. Fraze's age, education, and work experience could only perform past relevant work as a cleaner if limited to the following: never climb ladders, ropes, or scaffolds; frequently climb stairs and ramps; frequently balance, kneel, crouch, and crawl; never use moving machinery, be exposed to unprotected heights, or perform commercial driving; occasionally perform tasks requiring near acuity such as threading a needle or reading small print; occasionally perform tasks requiring far acuity on the left side; occasionally perform tasks requiring depth perception on the left side; cannot drive at night; simple, routine, repetitive tasks free of fast-paced production requirements; occasional contact with the public, occasional interaction with coworkers, and all contact limited to superficial interaction, meaning no tasks involving arbitration, negotiation, directing the work of others, persuading others, or being responsible for the safety or welfare of others. (Tr. 207). Others positions such an individual could perform include cafeteria attendant (DOT 311.677-010; SVP 2; light exertion) and linen grader (DOT 361.687-022; SVP 2, light exertion). (Tr. 208). If limited to no contact with the public, the hypothetical individual could still perform work as a cleaner/housekeeper. (Tr. 210). The VE testified employers tolerate an off-task

rate of no more than 10% and absences from work no more than one day per month. (Tr. 211,

215).

## THE ALJ'S DECISION

The ALJ's October 5, 2020 decision included the following findings of fact and

conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security
     Act through September 30, 2010.

2.   The claimant has not engaged in substantial gainful activity since December
     20, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et
     seq.*).

3.   The claimant has the following severe impairments: loss of central visual
     acuity, amblyopia; history of abdominal surgery; depressive disorder; anxiety
     disorder; posttraumatic stress disorder (PTSD); borderline intellectual
     functioning (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments
     that meets or medically equals the severity of one of the listed impairments
     in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
     404.1526, 416.920(d), 416.925, and 416.926).

5.   After careful consideration of the entire record, I find that the claimant has
     the residual functional capacity to perform light work as defined in 20 CFR
     404.1567(b) and 416.967(b) with certain restrictions. Specifically, the
     claimant can never climb ladders, ropes, or scaffolds but can frequently climb
     ramps or stairs. She can frequently stoop, kneel, crouch and crawl. She must
     avoid the use of moving machinery, commercial driving, and unprotected
     heights. She can occasionally perform tasks requiring precise near acuity, and
     occasionally perform tasks requiring far acuity and depth perception on the
     left. She can perform no driving at night, but can drive during the day. The
     claimant can perform simple, routine and repetitive tasks. The work
     environment must be free of fast-paced production requirements and involve
     only routine work place changes. She can have occasional public contact and
     occasional interaction with co-workers. Contact with others must be
     superficial, defined as no tasks involving arbitration, negotiation,

confrontation, directing the work of others, persuading others or being responsible for the safety or welfare of others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 21, 1986 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 3, 2017, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-26).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if

supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures

and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Ms. Fraze claims the ALJ improperly evaluated the opinion evidence and her residual functional capacity. (Pl.'s Br., ECF #9, PageID 1653-54). Additionally, Ms. Fraze claims the ALJ erred in his evaluation of her current part-time position. (*Id.* at PageID 1655). The Commissioner responds that the ALJ properly evaluated the opinion evidence, complied with the Appeals Council's remand order in assessing Ms. Fraze's residual functional capacity, and properly addressed Ms. Fraze's statements regarding her current job. (Comm'r's Br., ECF #11, PageID 1666).

**Evaluation Of Medical Opinion Evidence**

Ms. Fraze filed her applications for disability benefits before March 27, 2017; therefore, the ALJ considers the following factors: (1) the examining relationship, where more weight is generally given to the medical opinion of a source who has examined the claimant than to the medical opinion of a source who has not examined the claimant; (2) The treating relationship, including the length of the relationship, frequency of examination, and the nature and extent of the treating relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors which tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1572(c), 416.972(c). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* at §§ 404.1527(c)(2), 416.927(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

17

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5. This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Ms. Fraze claims the ALJ did not address Ms. Bowers' opinion that Ms. Fraze would likely be absent from work three to four days per month or Dr. Konieczny's opinion that Ms. Fraze would require "some degree of supervision and monitoring." (Pl.'s Br., ECF #9 at PageID 1654). She asserts both of these limitations are supported by her consistently observed anxiety during treatment and NP Ragon's evaluation. (*Id.*)

The ALJ's decision acknowledged Ms. Bowers' opinions and observations, identified certain internal inconsistencies within Ms. Bowers' mental health questionnaire, and ultimately afforded her opinion little weight. The ALJ explained:

> However, some weight is given to the extent that Ms. Bowers' statement suggests that the claimant's work causes her too much anxiety. This is supported by the overall record. [Ms. Fraze] struggles to cope and manage with stress, manifesting in increased anxiety, shaking, and crying. However, there is nothing in the record to support an inability to function in low stress and routine environments. The claimant has shown she is capable of at least some level of activity given that she has been working many hours each week in a stressful job dealing with people with disabilities.

(Tr. 22). Ms. Fraze provides no support for the idea that for a satisfactory evaluation of a medical opinion the ALJ must specifically address every aspect of a treating physician's opinion. Here, the ALJ's reasons for affording only some weight to Ms. Bowers' opinion are sufficiently specific and supported by the record. As I address below, the ALJ's consideration of Ms. Fraze's job working with individuals with disabilities is appropriate.

18

Next, Ms. Fraze argues the ALJ erred by not addressing Dr. Konieczny's statement that she would require "some degree of supervision and monitoring." (Pl.'s Br., ECF #9 at PageID 1654). The Commissioner claims this particular statement was taken out of context, noting that Dr. Konieczny stated Ms. Fraze "would appear to require some degree of supervision and monitoring in the management of her daily activities and in handling her financial affairs." (ECF #11 at PageID 1671-72). In her Reply Brief, Ms. Fraze asserts, without support, that the opined need for some degree of supervision and monitoring in the management of her daily activities "inherently relates to the level of supervision she would need in performing daily work activities." (Pl.'s Reply Br., ECF #12, PageID 1681-82).

In evaluating Dr. Konieczny's opinion, the ALJ did not address this specific statement. But the ALJ's decision later stated:

> The claimant's representative advocated for an additional restriction requiring supervision and/or monitoring due to the claimant's difficulty responding to pressure situations. I do not find this to be a warranted restriction as the claimant's difficulty with pressure situations is addressed by limiting her to simple, routine and repetitive tasks in an environment free of fast-paced production requirements and involving only routine changes.

(Tr. 24). This is a sufficiently specific reason for declining to include such a limitation in the residual functional capacity assessment.

For these reasons, I conclude the ALJ appropriately evaluated the disputed medical opinions and offered sufficiently specific reasons for the weight attributed to them. Accordingly, I decline to recommend the District Court remand this matter on this basis.

**RFC Evaluation**

Ms. Fraze next asserts the ALJ did not comply with the Appeals Council's remand order because he did not, in relation to the residual functional capacity assessment, provide "appropriate

rationale with specific references to the evidence of the record in support of the assessed limitations," and moreover, the residual functional capacity assessment is not supported by substantial evidence. (Pl.'s Br., ECF #9 at PageID 1653). The Commissioner asserts that the majority of courts in the Sixth Circuit have determined that federal courts lack jurisdiction to consider whether an ALJ complied with the Appeals Council's instructions on remand, and even if the court has jurisdiction, the ALJ did comply with the order. (ECF #11 at PageID 1672-73).

Federal courts lack consensus as to whether an ALJ's failure to follow Appeals Council directives in a remand order constitutes independent grounds for reversal, absent some other error. *Lease v. Commissioner of Social Security*, No. 1:18 CV 343, 2019 WL 1317782, at *8 (N.D. Ohio, Mar. 22, 2019). Some district courts in this Circuit have concluded they lacked jurisdiction to review what they viewed as an internal agency matter that arose prior to issuance of the Commissioner's final decision. *See, e.g., Sharay v. Comm'r of Soc. Sec.*, No. 15-12531, 2016 WL 8114220, *1 (E.D. Mich. Aug. 28, 2016), *report and recommendation adopted*, 2016 WL 5539791 (E.D. Mich. May 4, 2017); *Cooper v. Colvin*, No. 5:13-cv-00217, 2014 WL 2167651, *2 (W.D. Ky. May 23, 2014); *Brown v. Comm'r of Soc. Sec.*, No. 1:08CV183, 2009 WL 465708, *5 (W.D. Mich., Feb. 24, 2009). Other district courts have held this is a procedural error that denied the plaintiff fair process and, therefore, reversed the final decision of the Commissioner and, pursuant to Sentence Four of 42 U.S.C. § 405(g), remanded the case to the Commissioner for further proceedings. *See, e.g., Godbey v. Colvin*, No. 1:13CV-00167, 2014 WL 4437647, at *5 (W.D. Ky. Sep. 9, 2014); *Salvati v. Astrue*, No. 3:08-CV-494, 2010 WL 546490, *5–8 (E.D. Tenn. Feb. 10, 2010). At least three district courts within the Sixth Circuit have, for the purposes of the analysis, assumed without deciding that such an error may serve as an independent ground for reversal, and

the court thus has jurisdiction to consider the issue. *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 950

(S.D. Ohio 2014); *Schults v. Colvin*, 1 F. Supp. 3d 712, 715–17 (E.D. Ky. 2014); *Long v. Comm'r of*

*Soc. Sec.*, No. 2:11-cv-00343, 2012 WL 4009597, *2–3 (S.D. Ohio Sep. 12, 2012).

Assuming, *arguendo,* the district court has jurisdiction to review the matter and that such an

error may serve as an independent ground for reversal, I conclude the ALJ did comply with the

remand order. On remand, the Appeals Council took issue with the ALJ's determination that Ms.

Fraze was able to perform unskilled (SVP 1-2) work, noting that this term does not adequately

explain her maximum capacity to perform basic mental work activities and determined further

articulation of the residual functional capacity was necessary. (Tr. 366). The ALJ was directed to

"[g]ive further consideration to the claimant's maximum residual functional capacity and provide

appropriate rationale with specific references to the record in support of the assessed limitations."

(Tr. 367). In the most recent written decision, the ALJ determined Ms. Fraze could perform

simple, routine, and repetitive tasks in an environment free of fast-paced production requirements,

limited her to occasional public contact and occasional interaction with co-workers, and limited all

contact with others to superficial. (Tr. 18). The ALJ adequately supported these limitations with

references to the record:

> Overall, I find the claimant does struggle particularly regarding her mental health
> symptoms. She has ongoing anxiety consistently noted in the record on examination
> with period crying and diminished concentration. However, the claimant has not
> followed through with ongoing treatment for her mental health. The record shows
> that when she is compliant with medication and counseling, her symptoms improve.
> (Although the record also shows that her symptoms do correlate with life stressors,
> such as issues relating to her children and ex-husband and the death of her
> grandfather.) Despite the sporadic mental health treatment throughout much of the
> relevant period, I have nonetheless accounted for the claimant's alleged symptoms to
> the extent they are reasonably supported by the record. The claimant's anxiety,
> difficulty managing with stress, and difficulty being around others are addressed by

limiting her to simple tasks in an essentially low-stress environment with limited interaction with others.

\* \* \*

As described above, the claimant's allegations are accounted for in the residual functional capacity to the extent they are supported by the record. The claimant's statements that she is unable to maintain work activity is not well taken. She is currently working at a job five days a week, which job appears to require greater abilities than those set forth in the residual functional capacity. This could at least partially explain her difficulties functioning regarding her job. Nonetheless, she has continued in the same job, sometimes working up to 60 hours per week, since November 2019. In addition, the claimant is the primary caregiver for her five-year old son. While she reports sometimes asking her mother for help when she is having a bad day, the claimant is capable of caring for him as well as herself and her household independently.

(Tr. 24). The foregoing evidences that the ALJ abided by the Appeals Council's instruction to provide appropriate rationale and references to evidence of record to support the assessed limitations.

Ms. Fraze's last argument centers on the ALJ's consideration of her part-time work with individuals with disabilities. She essentially takes issue with the weight the ALJ attributed to the various pieces of evidence relating to her employment, including her own statement about working up to 60 hours a week at times, and claims the ALJ "uses [an] inaccurate impression of her work in his analysis of [her] abilities." (ECF #9 at PageID 1655).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). This Court must accord great weight and deference to the ALJ's opinion of subjective evidence, due to the ALJ's opportunity to observe a claimant's demeanor during the hearing—an opportunity this Court is not afforded in its review. *Jones*, 336 F.3d at 476. Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints or the conclusions drawn from them. *Baumhower v. Comm'r of*

22

*Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

At the most recent hearing in August 2020, the ALJ elicited the following information regarding Ms. Fraze's part-time position: she works five days a week from 8:30 a.m. to 2:15 p.m.; "quite often," she has to take off of work "to have a breather"; and she sometimes needs to step away from situations when she has problems dealing with some of the clients. (Tr. 194, 201). The counseling records contain various statements Ms. Fraze has made about her position, which the ALJ reviewed. (*See* Tr. 21-22). In December 2019, Ms. Fraze reported to Ms. Bowers that she was working full time for Shepherd's Hands as an STNA with special needs clients, and to NP Ragon, Ms. Fraze reported stable moods and mild intermittent situational anxiety. (Tr. 1539, 1594).

A June 10, 2020, progress note from NP Ragon indicates Ms. Fraze reported working 60 hours per week "for some time." (Tr. 1543). On July 2, 2020, she reported being off work for a period of time after her grandfather's death. (Tr. 1590). On July 21, 2020, she reported struggling at her job due to grieving the loss of her grandfather, needing her prescription for Xanax to get through work, and losing her temper. (Tr. 1588). In Ms. Bowers' letter dated August 20, 2020, she indicated Ms. Fraze "has reported high levels of difficulty functioning in her work setting as she is under constant stress to [take care of] others with severe disabilities." (Tr. 1577). On September 1, 2020, Ms. Fraze stated she would discontinue her job if she received disability benefits because it causes her anxiety and exhaustion. (Tr. 1586).

Payroll records provided by Ms. Fraze indicate she typically worked between 20 to 30 hours a week, though the poor quality of one of the pages makes it difficult to discern the number of

hours she worked throughout her employment. (Tr. 536-38). The ALJ confirmed Ms. Fraze's earnings from the part-time work did not rise to the level of substantial gainful employment. (Tr. 14). Contrary to Ms. Fraze's assertion, the ALJ did not misstate the record. As noted, Ms. Fraze told her counselor she sometimes worked 60 hours a week.

Ms. Fraze has not shown the ALJ erred by drawing improper or unsubstantiated inferences from the part-time work activity she performed during the period of alleged disability. The ALJ's consideration of Ms. Fraze's part-time work activity was but one of several factors contributing to his finding of non-disability, including Ms. Fraze's intermittent noncompliance with her effective medication regimen, the improvement she experiences when restarting her medications, and her ability to live independently, care for her son with her mother's occasional help, and perform household tasks including cooking, cleaning, and laundry. (Tr. 24). In addition, the agency's regulations specifically allow the ALJ to consider work a claimant has done during the alleged period of disability. Section 404.1571 states:

> The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity. If you are able to engage in substantial gainful activity, we will find that you are not disabled. Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. *We will consider all of the medical and vocational evidence in your file* to decide whether or not you have the ability to engage in substantial gainful activity.

20 C.F.R. §§ 404.1571, 416.971; *see also Miller v. Comm'r of Soc. Sec.*, 524 Fed. App'x 191, 194 (6th Cir. 2013) (ALJ did not err by considering ability to maintain part-time employment as one factor relevant to disability determination).

Ms. Fraze's argument amounts to a request that I reweigh the evidence, which is impermissible under the district court's limited review of Social Security appeals. *Brainard*, 889

F.2d at 681 (6th Cir. 1989) (holding that the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence).

Here, the ALJ's determination of no disability is supported by substantial evidence, including medical records, statements made to counselors, medication compliance, and daily activities. It bears repeating that even if substantial evidence or even a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477 (6th Cir. 2003).

For these reasons, I conclude the ALJ appropriately determined Ms. Fraze's residual functional capacity. Accordingly, I decline to recommend the District Court remand this matter on the basis of alleged error in this determination.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I conclude the ALJ's decision is supported by substantial evidence and Ms. Fraze has not identified any error in the ALJ's analysis of her claims. Therefore, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: December 16, 2022

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the**

25

proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).